18-1086 Marcus Reign v. Lori Gidley. Oral argument, 15 minutes per side. Mr. McGinley for the appellant. Good morning, Your Honors. May it please the Court, Michael McGinley from Deckard, LLP on behalf of the petitioner appellant, Mr. Magnum Reign. I'd like to reserve two minutes for my rebuttal, please. Thank you. In this case, the Court certified a single question, namely whether Mr. Magnum Reign's sentence violated the Supreme Court's decision in Alain when the sentencing court imposed a mandatory statutory minimum sentence not authorized by facts found by a jury or admitted by the petitioner. The Court's decision in Robinson only last year resolved that question and the State has now conceded that, quote, under Robinson, this Court must conclude that Mr. Magnum Reign's sentence violated the Sixth Amendment right to a jury trial as clearly established by Alain. That should be the end of the matter. Mr. Magnum Reign should receive the same thing that Mr. Robinson has now received. Why is that? There's a distinction in this case, as I see it, and so maybe you can walk me through this, because I'm having trouble conceptually understanding why this isn't a Alain problem and not what I would call a Booker-Blakely problem, and maybe I'm misunderstanding Michigan law. So, and you referenced this in your brief, you say, whatever the range is, I think you say ballpark four to seven years, one month, and the range the judge used, he or she used, is higher. But that, to me, right under Lockridge, what the Michigan Bookerizing, to quote, are guidelines, and what we're doing is we're taking them from being mandatory to being advisory. So it's not an Alain problem, which increases the mandatory minimum, it's a guidelines issue. So part of the confusion might be that Mr. Magnum Reign, like Mr. Robinson in the Robinson case, he was sentenced after Alain, but before Lockridge. So at the point of time when he was actually sentenced, the operative sentence that applies here was while the regime was still mandatory. Right, no, I agree with that. Okay. But I don't, so hold on. Okay. Okay. Go ahead. Okay, so you've got to answer that, but let me just walk you back a second. When he was sentenced to the ten years, right, let's talk about it in the years, because he ultimately got nine and that's where I think Judge Rogers is going to come in, but when he was sentenced to the ten years, I agree with you it was mandatory guidelines. Okay. But that's a Booker, not an Alain problem. So when we keep referencing Alain, we're referencing in my mind the wrong case. And that's what I'm asking, is there something unique to Michigan? Yes. Go ahead. I don't mean to cut you off, but No, go, please do. The way that Michigan works is that you have, there's a, the guidelines dictate a range both for the minimum sentence and for the maximum sentence. And so what the, what the judge does when he runs the guidelines is he says, okay, I have calculated the range for the minimum and I pick in this case, first 10 years, then nine years. Okay. And then he calculates the maximum range and he says, and I pick this. Right. But post, so now let's go post Lockridge and then Judge Rogers is going to jump in, but post Lockridge, all of those are merely advisories. So they've Bookerized their guidelines. So let's assume there's a range for the minimum and a range for the max. And now I've got this big range. And what the judge does is he says, okay, Lockridge gives me the ability to not re-sentence him, but to say, okay, I've looked at this and I would still give him the same sentence. And I'm shorthanding their four factors. Yeah. But so, and to drill down just a little bit more. So what the judge actually does is gives him a minimum sentence and a maximum sentence. And then functionally his sentence ends up being dictated largely based on the parole board. Because what happens is he goes into prison and he serves the minimum, at which point he's eligible. I promise this is my last question. So Judge Rogers can jump in for now. But when he gave him nine years, what was that? His minimum. So he had to serve at least nine years. And then there was a maximum beyond that, that frankly I don't recall because it hasn't been... The statutory maximum. Yes, but it's a statutory maximum. I think that the judge also has to pick that number though, correct? I don't know. I don't see how it makes a difference. If it's a statutory maximum, the judge wouldn't pick the number. The statute would dictate them a number. In effect, he's picking a number within a range for the minimum. Exactly, right. And so that's why it's an Elaine problem as opposed to a Blakely problem or an Apprenti problem. Go ahead, your turn. Okay, I'm looking at what the court wrote when he gave the sentence that is being appealed. The sentence that's being appealed is nine, right? Or has a nine year minimum instead of a ten year, right? That's correct. Okay, so he did give ten and at that time, the Michigan Booker Ising case hadn't come down, right? Right. But it had come down when he gets it again, correct? Is that right, yes or no? That's correct. Alright, so this is what he says. He says the resentencing occurred, he's referring now to the ten years before the Michigan Supreme, I'm at, well, where is it? Page ID 212 and 13. Okay, dependents resentencing occurred just days before the Michigan Supreme Court issued Lockridge. In Lockridge, the Michigan Supreme Court held that the sentencing guidelines are now advisory only. The issue before this court when deciding whether to In this case, the court, meaning itself, considered the guidelines, which are based on various blah, blah, blah, after accepting and going through it, a sentence. I didn't then feel constrained by the then mandatory guideline, the nature of the guidelines. Maybe he should have if they were then mandatory, but he didn't feel constrained and so therefore, he says, I would have applied the reasoning regardless, accordingly, Lockridge doesn't require resentencing in this case. He might have said it in a different way and made it easier for us, but basically, he's saying, treating these as advisory, I come to the same conclusion. So, I'd say a few things to that, your honor. The first thing I'd say is, with respect to the Allain claim, he denied that claim. He denied that motion. He did not actually This language right here, what is he doing here that wouldn't be sufficient on a remand now back to him to do something different? So, what would happen on a remand now is he would no longer be constrained to actually follow the precise terms of the guidelines and so we would be He's saying, not constrained, this is what I do. Well, yes, but the argument Unfortunately, he said, this is what I did instead of this is what I do. Right, but I think there's a distinction between saying, I ran the guidelines exactly how I was obligated to do, even if I was allowed to choose a different number, using those What can happen now is, you can actually argue about all sorts of other things and you can argue that, for example, the ten points that are assigned for certain defense variables should be, are too high and so in the weight of all of the balancing that's done in a discretionary regime, you shouldn't actually view the sentence range as as high as Counselor, I want you to go back to that one sentence that Judge Rogers read just now where the judge says, the court would have applied its same reasoning, regardless of whether sentencing occurred before or after Lockridge. So with respect to the question that Judge Rogers posed, I don't understand where you find there's a constitutional error when the judge is clearly aware of its ability to do a number of things. The place that I would identify the constitutional errors, I'd say that's not actually correct harmless error review under an Apprendi or an Allain claim, because the constitutional harm under Apprendi and Allain is judicial fact-finding. And so the way you would conduct harmless Wait, this is why it's important to get this in the right box, right? So this is why it really is a Booker issue and not an Allain issue, because I understand what you're saying. You make perfect sense on Allain, but what Allain did is it set a statutory minimum with judge found facts. So we got to remember where Allain came from. Booker allows for judge found facts in the advisory guidelines. Lockridge allows for judge found facts in the advisory guidelines. What he says is they were mandatory guidelines before. They're now advisory. I agree with you. They're on a minimum. They're advisory now. If I was to redo this, I would reach the same place and I'm allowed to find the facts. I just have to recognize that I don't have to sentence in the guidelines where the facts would take me, but I would sentence in the same spot. Right, but we would say that, so the first point I'd make is that under a discretionary regime now, if there was a sentencing, we would be able to make arguments outside of the offense variables. At the time of his initial, of his first resentencing, the judge was obligated to So that's a great point. So that's a great point. So tell me in a habeas regime. So your argument is he didn't consider all the arguments. But then the question is, is what Lockridge prescribed contrary to clearly established law? And to me, it's not because we have this Crosby regime and the Supreme Court never said Crosby was problematic, irrespective of what we said in Milan. And so how is that right? Well, so the first thing I'd say is I'd quibble a little bit with your characterization of what the Supreme Court has said. In Booker, I think if you look at the last two sentences of Justice Breyer's remedial opinion, it's pretty clear he sets up a taxonomy where he says, unpreserved claims get plain error review, which is what Crosby is, to be clear. It's not a harmless error. You know what this is, right? Because he didn't preserve it pre-Lockridge. Yes, he did. He did? He did. Where? His sentence, so his 10-year sentence was subjected to the guidelines being mandatory? Yes. Oh, OK. It's a preserved Sixth Amendment claim, which means it doesn't fall within the plain error review that Justice Breyer sets out at the end of Booker. And then Justice Breyer says in the final sentence, the court says, non-constitutional claims can be subject to harmless error review. Because remember in Booker, you had some claims that were not Sixth Amendment claims. It was just the guidelines were mandatory and I want them to be discretionary. So he says those can be subject to harmless error review. So is your best case for where the Supreme Court has reversed because of an inappropriate remedy on a Sixth Amendment violation? I don't know that there are any, but is there? And then if not, are you relying on Booker for that? We're relying on Booker, but we're also relying on Alain, because the reasoning in Alain, in Justice Thomas's opinion, is he says, remember the dissent's entire argument was that Alain could have received the seven-year sentence even under a five-year mandatory minimum. And so it's sort of a no harm, no foul. I mean, that's sort of the entire analysis of the dissent and also was the basis of Harris and McMillan. And Justice Thomas says, that doesn't matter. When you have a Sixth Amendment violation, you're entitled to a constitutional sentencing regime. We would say the same thing here. It doesn't matter that the judge, if he wasn't constrained- Wait, walk me through the Alain point, because the Alain point I still struggle with because it's a statutory minimum versus guidelines. Right. So, okay, taking one step back, Robinson says, this court's decision, Robinson says that there is an Alain problem, right? And I understand it's our decision, and so it's binding on me. I disagree with that, because of the way I think about Alain, and maybe one of my problems is I think about it more like Justice Scalia than Justice Thomas, and I recognize they're on different parts. But Alain goes to mandatory minimums, and a jury has to find that in every world, whereas guidelines a jury never has to find unless you're talking about the original meaning, which I can't go back to right now. So what are we talking about here? And I think that's why you have to look at the reasoning in Alain, and then you look at what Booker actually does, right? And what this court says in Milan is that you have to actually look at what they did. They ordered resentencing in Booker. But that isn't just what they did. So there is no, the answer, I guess, let me back up to my question, which is there's never been a case where the Supreme Court has reversed because of an inappropriate remedy. You're saying look at the remedies they've given, and then make that. Well, it's more than just that, because it's not like Booker said nothing about what you would do in terms of plain error or harmless error review. It actually talks about it, and it very conspicuously leaves out preserved constitutional claims as available for harmless error review. It would make no sense for the opinion to say non-constitutional claims can get harmless error review if it meant to also include constitutional claims there. And so I do think Booker is directly on point here. I see my time is up. I have some questions. Yes. Go right ahead. I'm a little daunted by Judge Thapar's questioning because I'm sort of left at an earlier stage of the analysis. I was concerned about your answer to the question of why what I read didn't make a difference, and part of your answer was that they were never given the chance, your client was never given the chance to argue what I undertook to be something in the nature of a variance. We would call it a variance at least. Never been given that kind of chance. If you weren't making that argument, then I don't know what argument you have, but maybe you were making that argument. But I wonder if it holds. After his first re-sentencing and after Lockridge came down, you moved for a correction of sentence. Is that correct? Right. And you argued that in part, part of it was this business about what was the middle if you counted by months and what was the middle if you counted by years and so forth, on which you obtained relief, right? And the other part of the argument had to do with you also argued that the sentencing court had relied on judicial fact-finding in violation of a lien, right? So you argued a lien, which is the equivalent of saying, since this is after Lockridge, you should make this decision on the basis of non-bindingness of the guideline, right? And I don't see why you couldn't, if you didn't, say this would be an appropriate case to go below the guideline. So if you had the option to argue that, I don't see what the harm is in looking at this as if the court did exactly what we should, if we accept your argument, send it back and tell it to do. So I'm just not seeing how, I think it's misleading to talk about this as harmless error. The way to look at it, it seems to me, you can instruct me how I'm wrong, is that this wasn't error in the last place. In the place before the appeal, the decision, the final decision as to what the sentence was, was a nine-year minimum, based on the exercise of my discretion, having found the guidelines to be X, I think that's where I would come down as well, because I'm not bound by the guidelines, and that's what we would be sending back, asking him to do. So I don't see where the there there is. Let me try to help you find the there. So the first thing I'd say is, when we asked for the re-sentencing under Elaine, that was a sort of antecedent question to say, we would like to have a new sentencing proceeding in which you are no longer bound by the guidelines in their mandatory state, which means not just that you have to pick a number within that range, but that you have to hew to the offense variables set forth. And we want to be able to present a different type of argument. The court's decision in Lovins and the court's decision in Villa-Garcia make it very clear that there is a fundamental difference in nature between a sentencing that occurs under mandatory regime and a sentencing that occurs under a discretionary regime. And in both cases, the court found that there was not harmless error, and in Villa-Garcia, the judge had imposed the same seven-year sentence twice. Can I follow up on Judge Rogers' question, because I understand what you're saying, but to, if what you're saying is, look, we wanted to present these additional arguments, what Judge Rogers' point is, you had that opportunity, you presented it to the district court, the district court then decided, no, I'm not going to hear it pursuant to Lockridge, and sentenced you, your client, to nine years. And I don't think that's quite right, because what we were asking for in that motion was an antecedent to saying, here are all the reasons why we think the sentence should be different. But don't you have to, because what the Lockridge case provides for, and this gets back to my Crosby point, what the Lockridge case provides for is a Crosby remand. What the district court did, even though it wasn't remanded, was effectively a Crosby remand. And because it did a Crosby remand, it had no obligation to resentence you. So a few things. I'd say, number one, the Crosby remand is inconsistent with Booker, for the reasons that we discussed. Crosby's post-Booker, right, and the Supreme Court's never said. Well, I'm saying that the way that Lockridge fashioned the Crosby remand is inconsistent with my point that Booker requires a resentencing. But the Lockridge, no, I agree, it's inconsistent with your point, but my point is that Crosby is post-Booker. The Supreme Court's never said it's impermissible, and Lockridge adopted it. Well, part of the reason the Supreme Court has never said it's impermissible with respect to preserved constitutional claims is because even the Second Circuit doesn't continue to take that view. I think the state concedes that with respect to preserved constitutional claims, Crosby's not. Counsel, I'm going to ask you now to complete your answer to Judge Rogers' question, because we are seriously in a hurry, and then I'll give you your rebuttal time still. But Judge Rogers had a question that you were, I believe, answering, and if your answer is not completed, please complete it now. I'm trying to take my mind back to where it might have left off, but I think that the first point I was making was that what we were asking for was the ability to articulate different reasons, which we couldn't do in the prior sentencing and wouldn't have done in the Allain motion, because the motion was to ask for that opportunity. I don't know that there was another answer. I'll think about it, and maybe I'll have something on rebuttal, but if there's anything else. Thank you. Judge Rogers? No. Thank you. Thank you, sir. We'll now hear from the appellee. Thank you, Your Honors, and may it please the Court, Linus Vanghart-Linn, Assistant Attorney General for the State of Michigan, on behalf of the Respondent, Warden, and Respectfully Requesting Affirmance. I'm going to begin by addressing this pretty serious, I think, mistake about Michigan law in terms of what will and won't happen on remand if he gets a resentencing. The fact is that the guidelines are going to be scored exactly the same way. Post-Lockridge, just like in the federal system post-Booker, doesn't affect judicial fact finding, and so that error, which appears in the reply brief in saying that the constitutional error here is the judicial fact finding and not the mandatory guidelines, that can't be true because we still have judicial fact finding. I think we understand that. Okay. All right. I'll move on from that. But the idea that he'll be able to argue outside the offense variables on remand, that was available, even pre-Lockridge, that's available. You can ask for departures. We called them departures. I think that's the variances that maybe you're referring to. You can argue- Well, I'm arguing for a variance. It's a different kind of argument than arguing for a departure. Oh, well, okay. I'm not familiar with the federal system in terms of a variance at all, so I probably shouldn't step into that. Whatever you feel is consistent with the general requirements, whereas departure has to fit within a specific provision of the guidelines providing for departures. Yeah, I think pre-Lockridge, what departures were is essentially that the statute required there to be substantial and compelling reasons, and that's a very subjective standard. Defendants have always been free to argue that there are substantial and compelling reasons for a downward departure, just as prosecutors routinely pre-Lockridge argued for upward. Wait. But Michigan, when Michigan bookerized, they adopted the federal scheme, and they had to because you still have departures, which as you pointed out, you could have done pre-Lockridge. But now you can also argue, Judge, I recognize the facts may meet that guideline, but very out of it, and I'm using this federal terminology, you, Judge, have the discretion to sentence me to less. I think there might be a misunderstanding. The guidelines range is set the same, pre-Lockridge and post-Lockridge. The offense variables are scored the same way, and pre-Lockridge and post-Lockridge, the judge gets a range. And then at that point, the judge can sentence within or outside the range as the judge feels fit based on the arguments. And you're saying they could do that pre-Lockridge? It's just that pre-Lockridge, the judge had to find substantial and compelling reasons to justify going outside the range, whereas now they just have to have, they just have to feel that it's a proportionate sentence. So yeah. So I'm not sure why you've answered their argument that I didn't get to present all these arguments, that I do get to present post-Lockridge, now I can't, I never got the chance to present them. Because to the extent that they want to argue that you should depart downward now that the guidelines are advisory, I think that's what they're arguing. You've got to concede it was much more difficult in a pre-Lockridge world. Much more difficult to succeed on the argument. I don't think it's much more difficult to make the argument. I think they could have made the argument, and I think also to Judge Rogers' point, I got all these reasons that I want the judge to depart downward and give you a lower sentence, but you know what, I don't think they're substantially compelling, so I'm not going to present them to the court. No. They'll make the arguments if they have the arguments to make, pre-Lockridge and post-Lockridge. Do you concede that they objected before Lockridge to the mandatory nature of the guidelines? I think they objected to the judicial fact-finding and guideline scoring. Pre-Lockridge it was not clear what, well it wasn't clear how Lockridge would be decided, but also it wasn't clear if the defendants won Lockridge what the remedy would be, and they argued, in fact, that we should have jury determination of sentencing guidelines. And so I don't think that the argument was specifically made. Wait, but that is, that's close. That's pretty darn close. It is close. And I think it's close. So if they made that argument, then why aren't they right that Booker slash Robinson compel us to order a resentencing here? Because Booker never held that that was required. Booker held that is what Booker did. But then Crosby and Palladino and Amoline and Coles, four different circuits said, and admittedly these are unpreserved claims. But as my counsel just said, the United States Supreme Court never said that this is an inappropriate practice for preserved claims. And this is habeas, this is a 2254 case. We need a holding from the United States Supreme Court if Mr. Magnum Rain is going to prevail. As we said in Robinson, Booker did compel a resentencing under these types of circumstances. Booker ordered a resentencing, but Robinson didn't hold that that was the required remedy. And in fact, Robinson did not order that remedy for Robinson. Robinson simply left it vague and said, further proceedings consistent with the constitution. Okay, I'm mixing them up. I'm sorry. In Milan, we said that. Yes, in Milan, not a habeas case, not a case where this court was bound by the universe of clearly established federal law under 2254D. If this were a direct appeal case, I wouldn't be standing here. Milan is Milan. That's the rule. This is 2254. You can look at Milan, but you can also look at Palladino, which responds to Milan. You can look at Crosby, and unless there's a Supreme Court holding that one of these is wrong, then the state court can do what it wants to within reason, and this is reasonable for the reasons that were gotten at by Judge Rogers in his questioning. We know that this is harmless because the very decision-maker who made the decision said, here is what I would do if the guidelines were advisory. That's the remedy is advisory guidelines, so no. I was hustled by your saying it's harmless. When you say it's harmless, it sounds like it's error. I understand, Judge, and based on your questions, I'm second-guessing my framing of this issue. I'm thinking I should have framed it differently, and I... You call it harmless error. What was the error? It's just that... The error was... Right. The error was that the first two sentencings, the first one we can disregard because the second one trumps it, but at the second resentencing, the judge was bound by mandatory guidelines that were arrived at using judge-found facts, so that's the error. The question is whether that error actually affected his sentence, and we know that it didn't because of what the trial court said at the third proceeding, and so whether you frame it as not error or harmless error, I don't know if it's really important to the questions. Like I said, it might be more persuasive. It's a little bit strange for you to be arguing harmless error when you didn't argue it below. I understand, and I would like to respond... It's not error at all. Well, at the time we filed our answer, it wasn't. We didn't believe that it was error. We had an unpublished decision from this court saying that a lane doesn't apply to Michigan sentencing. We had a lot of other decisions saying a lane applies to mandatory minimums. We didn't have Robinson. Is the problem here what the district court did in this case? No, the district... Well, the district court did... The district court, again, decided the case before Robinson, and so it had the benefit of Kitka v. Franks, which again, unpublished, but it held that this doesn't apply, and that's what we argued. So Robinson comes along, and I think it was... You're arguing for affirmance on grounds that are different from the district court's. That is correct, but I think that that's justified because... To get into whether the district court's analysis was correct or not. Well, the district... Yes. I mean, the district court's analysis was obviously wrong in light of Robinson. It was right at the time it was decided, and subsequent change in law made it wrong, but I think that's... You don't have to decide that. What's that? You don't have to decide that it was right when it was decided. No, exactly. But I would like to address the idea that we've waived or forfeited the harmless error argument. We certainly haven't waived it because we never conceded that it wasn't harmless, and as far as the forfeiture goes, I think part of it, I think the first factor I think that should be considered is the fact that we didn't need to. We had the law on our side at the time we filed our answer. I would also like to address what, in the reply brief, Gover has cited, which is a case on when to consider harmless error when it hasn't been raised, and he cites it and says, well, we don't need it, and there's no discussion of it. And so I'd like to look at Gover and look at the factors that this court adopted from Giovannetti out of the Seventh Circuit, and the first factor that they look at is whether or not the record is lengthy or complex. You'll never see a case with a less lengthy and complex record on harmless error than this. I'm relying on three sentences, one really important one, on one page of the record on 213. That's our error. So first factor, that militates in favor of considering harmless error. The second factor is, I apologize here, is whether the harmlessness is clear or debatable. Again, this is a very clear case of harmlessness. The very decision-maker said, I wouldn't have made a different decision in the absence of constitutional error. The only way they make it debatable is by misunderstanding the error and arguing that the guidelines would be scored differently in light of Lockridge, which they wouldn't be. They'd be scored the same way. And that error appears on pages 7 through 11 of their reply brief. The third factor is whether the reversal will result in protracted, costly, or ultimately futile proceedings. I think ultimately futile, that is clear. If there's a remand for resentencing, we know what the sentence will be because the trial judge has told us. Whether it's protracted or costly, I think is relative. A resentence is not cost-free. And there is also the fact to consider that based on how this court decides this case, there are a lot of other cases waiting in the wings. And if this court finds in Mr. Magnum Rayne's favor and publishes, that is protracted and costly, the number of resentencings that will need to occur based on that. Gover also recognized some concerns raised by the Ninth Circuit and Gonzales-Flores, which is whether this concerning harmless error would require the court to search the record. No. Again, it's quoted in the appellant's brief. It's quoted in our brief. It is page ID 213. That's the record. And whether or not it would reward or encourage sloppy lawyering. And again, I would say based on the state of the law at the time we filed our answer, I don't think that it was reasonable to accuse us of sloppiness when the law was on our side on the merits and we never needed to consider whether the limited remand that he received in this case was adequate under clearly established federal law. So I'm still struggling a little bit with what we did in Milan. In Milan, we said Booker required resentencing. Why isn't that clearly established pre-Crosby? So if the Supreme Court clearly establishes something and then the circuits come around and monkey with it, assume my hypo is right, aren't we still obligated to follow the clearly established law of the Supreme Court? And then if we've said that's the law, why aren't we bound in following that? I think that, I'm going to approach this in a couple of ways. I don't think that the way I read this court's decision in Milan is saying that Booker, essentially that Booker clearly establishes that this is required. I mean, obviously those words weren't used and I don't rely on the magic. I'm not saying magic words. What I'm saying is I think that this court took Booker and said, you know, what do we think is the logical conclusion of Booker as we apply it to the facts of this case? And I think that is different from saying this is clear. I mean, there's no really analysis required if Booker clearly establishes it, and yet you have a lot of analysis in Milan and you have the discussion of Crosby. And just like in Palladino, the other point I would like to make is that under 2254, what decide whether it is contrary to an unreasonable application of clearly established federal law. The court, the state courts are required to read and understand Booker. The state courts are not required to read and understand Milan. They can look at Milan. They can look at Palladino. They can look at Crosby. Well, they have to look at- Sure, but Booker said this is a problem because these facts weren't submitted to a jury. So we're remanding for resentencing, not we're remanding for the district court to decide if it was plain or harmless, but we're remanding for resentencing. And your friend on the other side says, look at what they did, as we said in Milan. And what they are doing is they're not saying it's plain or harmless. They're saying you have to resentence in this case. I think the issue was not raised in Booker whether a more limited remand would be appropriate or not. And if that issue had been raised, again- But no Supreme Court case has said that a more limited remand is appropriate, have they? Like they didn't say it in the lien. They haven't said it since Booker. So the only thing we've got to go from from the Supreme Court is what the Supreme Court did in Booker. Right. And that's not enough. We don't need a case that says we win. They need a case that says they win. If the Supreme Court hasn't spoken to the issue, then you can't say that the state court's decision was contrary to or unreasonable application of clearly established federal law. Booker held that a resentencing was appropriate in that case. It did not hold that the Sixth Amendment requires a resentencing in cases like this because that issue was not pressed or passed upon in Booker. That was not before the Booker court. It wasn't before the Alain court. And it couldn't have been before the Alain court because if I recall correctly, Alain was out of the Third Circuit, which doesn't adopt Crosby. So you don't have a Supreme Court case holding that the Sixth Amendment requires this. You just have this is the remedy that they imposed in the absence of any argument from the government that a more limited remand would be appropriate. Only Crosby. Crosby came along. Palladino, Alain, and Coles. And the Supreme Court passed upon its opportunities to to correct those. And again, that's a certain denial is not precedential. But I mean, it's also not a nullity, I don't think. But for these reasons, we request affirmance and I'd be glad to answer any other questions. Thank you. Thank you, Your Honors. We have two minutes for bubble. Thank you, Your Honor. As I sat down, I remember the other point that I was going to make for Judge Rogers, which is that the March 2016 order is not a resentencing. When the judge corrected the sentence, what he said was he's correcting judgment of sentence, which effectively was fixing the equivalent of a Scrivener's error. He meant to impose a mid-guidelines range. They just calculated it wrong. And then he went on to say, in all other respects, the motion is denied. And so Mr. Magnum Rain was denied the opportunity for resentencing in March 2016 based on the claim that he's he's pressing here now. The second point that I'd like to make goes to the colloquy that Judge Thapar was just having with with my brother on the other side, is that the reason that the Supreme Court has not had to address Crosby is because no other court has ever said that Crosby applies to preserved constitutional claims. And the reason they haven't said that is because Booker prohibits it. That's what the court said in Milan. And that's and that's plain. I mean, the Second Circuit itself is in it. The last paragraph of Booker, right? And the line. Do you have it in front of you? I can get it. Well, can I read it to you real quick? The fact does not mean that we believe every sentence gives rise to a Sixth Amendment violation, nor do we believe that every appeal will lead to a new sentencing hearing. That is because we expect reviewing courts to apply ordinary prudential doctrines, determining, for example, whether the issue was raised below and whether it fails the plain error error test. It is also because in cases involving a Sixth Amendment violation, whether resentencing is warranted or whether it will instead be sufficient to review a sentence for reasonableness may depend on the application of the harmless error doctrine. So why do you mind if I grab my cup? Because my recollection is that it says in when you're not when there's not a constitution in a non-constitutional Booker. But they say, OK, go ahead and get it. It says in it is also because in cases not involving a Sixth Amendment violation. Oh, in cases not involving. So I read that out. OK, so what do we do with nor do we believe that every appeal will lead to a new sentencing hearing? I think you have to read that sentence in light of the two sentences that follow it, which is which clearly indicate that for unpreserved claims, you do a plain error review for non-constitutional Booker claims. You don't do harmless or you do harmless error review, which means for constitutional Booker claims you resentence as long as you preserved the way you read that, as long as you preserve. If you didn't preserve, Crosby is OK. If you did preserve, Crosby is not correct. The other thing I would say is that I didn't say this in the opening, but our position, of course, is that all of the arguments that are raised now were forfeited because the only argument that the state pressed in the district court was that Elaine simply didn't apply at all, which Robinson has since rejected. You can see Judge Rogers is right that if this isn't truly harmless error, then it's properly in front of us. Well, I would say anything else that they could have argued and didn't is forfeited. I mean, in Lovins... You can't affirm on alternative grounds, though, right? You can, although usually the alternative grounds are ones that are pressed by the other side and just not adopted by the lower court. Wait, but our precedent says we can affirm for any reason on the record, right? So it doesn't say pressed by the other side. Your precedents also say that you enforce the forfeiture rule and that includes in habeas cases. It's a prudential doctrine, right? Sure. But I just don't think it's too much to ask when somebody's been sentenced to a significant amount of time that he receive a sentencing that's consistent with the Constitution. We have had cases, even under Booker, where we said it was clear enough that they would have come to the same decision and therefore Booker error was harmless. Where the district court, for instance, said, well, I mean, I don't have the cases at my I'm saying that this particular guideline applies, but even if it didn't, I'd come to the same conclusion. So my understanding of the normal harmless error analysis post Booker is that what you look to is whether or not there are facts on the record that were found by a jury or admitted by the defendant that are enough to satisfy the relevant factors. Or if the sentence imposed would still qualify under a range that excludes judicially found facts, which here neither of those factors are present. And I think if you look at Lovins. Tell me again now, when you argued that the sentencing court had relied on judicial fact further say, and therefore this court should sentence less because you're not bound. Well, I mean, what we were saying is I'm asking, yes, and I think you didn't ask, you didn't argue that. And now you want to argue it. That's what it all boils down to, in my view. Well, what we were asking in that motion was to say we want the opportunity to have a full resentencing hearing under a constitutionally valid regime, which means that you're not required to hew to the OVs. And so if you had a full resentencing, then you could exercise all of your options, including asking for a lesser sentence. Exactly. Okay. Something else. You couldn't ask for a lesser sentence. Now, I understand you're saying we'd like to argue X rather than arguing it. I'm just not quite getting why, why that not, not, you're not doing that gives you the right now to get that when he knows that it's voluntary now. Well, I think because the request that we were, that we had to make was to do a resentencing. And the premise for asking for that was. By resentencing, though, you just mean the chance to argue. Yes. Sorry. We asked for a resentencing hearing. Right. We asked for a resentencing hearing. Resentencing hearing. Is what it is. I apologize for that. So it's basically the denial of a hearing, then, is what you're saying. Well, it's functionally the denial of both, right? Well I don't know. I mean, you're saying there's now, in effect, a constitutional right to a hearing with respect to what the judge decided. The judge decided that he would do the same thing even if the guideline was voluntary. You're saying you decided that without giving us a chance to have a hearing to argue that. If we had had a hearing to argue that, it would have complied with all of this law, right? Well, I don't think he's, I don't think what he was saying exactly was, if I were now to do a full sentencing hearing, including every possible argument, I would come to the same conclusion. What he was saying is, had I not been constrained by Michigan's mandatory nature at the time. That's different than what he said in the black and white text. And you know, I don't think there's a need to argue what he might have thought when he told us where he stood. And so I'm going to ask you to wrap up now, because we're well into your... Can I ask one question? You can ask one. I promise it's one. Okay. You can ask one, and you must answer it narrowly. Okay. Okay. Yes. Why isn't your argument that irrespective of whether he would have done this or not, in light of Booker, it doesn't matter because you can't do the harmless error analysis if we objected pre-Lockridge to the mandatory nature? So that is our argument. Thank you. We would ask that you reverse, or at the very least, vacate and remand. Thank you, Your Honor. Thank you. The matter is submitted. I believe that there are no other argument cases on the calendar. You may adjourn court.